UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-10359-GAO

JOHN HORAN,
Plaintiff,

v.

ANDREA CABRAL, NAPHCARE, INC., JAMES CHEVERIE, M.D. JOHN DOE, P.A., and
JANE DOE, NURSES,
Defendants.

OPINION AND ORDER
September 29, 2017

O'TOOLE, D.J.

The plaintiff, John Horan, a former inmate at the Suffolk County House of Corrections ("SCHOC"), asserts federal and state civil rights violations and various state common-law claims against the former Sheriff of Suffolk County, Andrea Cabral, and various medical personnel associated with SCHOC. The claims stem from allegedly inadequate medical treatment that Horan received during his time as an inmate there. Pending before the Court is former Sherriff Cabral's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

**I.     Facts Alleged**

The amended complaint alleges the following relevant facts: during and prior to his incarceration at SCHOC in December of 2012, the plaintiff suffered from osteomyelitis—a type of bone infection—with the root of the infection apparently located in his right foot. For more than one year prior to incarceration, Dr. George Abraham had treated the plaintiff's osteomyelitis with intravenous antimicrobial therapy administered through a peripherally inserted central catheter, or "PICC line." Both the osteomyelitis and the PICC line treatment persisted after the plaintiff was

incarcerated. Shortly after the plaintiff's incarceration, Dr. Abraham notified medical personnel working at SCHOC, including Dr. James Cheverie, the medical doctor at SCHOC, of the plaintiff's condition and requested that SCHOC contact him before stopping any treatment of the osteomyelitis. Dr. Abraham also warned that cessation of the PICC line treatment could exacerbate the infection and possibly require amputation of the plaintiff's toes or foot.

Notwithstanding Dr. Abraham's warning, on or about January 13, 2013, Dr. Cheverie and other medical professionals at Shattuck Hospital removed the PICC line after concluding that the plaintiff's infection did not require intravenous treatment. The plaintiff objected to the removal of the PICC line and reports that his condition worsened almost immediately after it was removed. He received oral pain medication from SCHOC personnel but did not receive any oral antibiotics until much later. On January 15, Dr. Abraham wrote a letter to Dr. Cheverie warning him that removing the PICC line could aggravate the osteomyelitis and result in amputation. On January 22, counsel for the plaintiff also sent a letter to Dr. Cheverie warning him of the risks associated with removing the PICC line, enclosing the January 15 letter from Dr. Abraham. Counsel sent this same letter, with the January 15 letter from Dr. Abraham enclosed, to Andrea Cabral, the Sherriff of Suffolk County at that time. The plaintiff alleges that this letter "put her on notice of the circumstances of Horan's serious medical needs and the importance of maintaining intravenous antimicrobial therapy." (Am. Compl. ¶ 26 (dkt. no. 29).)

By January 31, the plaintiff's toe was discolored and swollen. On or about February 13, Dr. Cheverie confirmed that the plaintiff's condition continued to worsen. The plaintiff was then advised that his right, second toe needed to be amputated. After the plaintiff was released from SCHOC under a community supervision program, his right, second toe was surgically amputated

on May 31. The plaintiff alleges that the amputation of his toe was the result of deficient medical treatment.[1]

## II. Discussion

The claims against Cabral include generally stated federal and state civil rights violations, as well as a specifically stated violation of the Eighth Amendment. There are also various common law and tort claims for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and assault and battery.[2]

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). The factual matter in the complaint, accepted as true, must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and will not survive a motion to dismiss. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

---

[1] The plaintiff's Motion and Incorporated Memorandum in Opposition to Defendant's Motion to Dismiss (dkt. no. 33) contains additional factual assertions about Naphcare, the contractor responsible for providing medical services to SCHOC. Ordinarily, the court will not look beyond the complaint when evaluating a motion to dismiss, and none of the reasons why doing so might be appropriate exists in this case. See Young v. Lepone, 305 F.3d 1, 10–11 (1st Cir. 2002); Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993). Even if this information had been considered, it would not have affected the outcome of this motion, which is focused on the allegations against Cabral, not Naphcare.

[2] The plaintiff's Amended Complaint (dkt. no. 29) often uses "defendants" without making specific reference as to which of the defendants in particular is responsible for the alleged conduct. The Court assumes for the purposes of this motion that Andrea Cabral is an intended defendant for all claims except the medical malpractice claim. She was not alleged to be a medical professional and is excluded from the list of named defendants on that count.

A.     Federal Civil Rights Claim under 42 U.S.C. § 1983

The plaintiff alleges that the purportedly deficient medical care he received as an inmate at SCHOC violated the Eighth Amendment's prohibition against cruel and unusual punishment. The claim is asserted against Cabral in her individual capacity.[3]

To successfully state an Eighth Amendment claim based on inadequate medical care, the plaintiff must plead that the relevant official was deliberately indifferent to an objectively serious deprivation or medical need. See Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011) (discussing the subjective element of "deliberate indifference" and the objective element of "serious" deprivation). "Deliberate indifference in this context may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'" Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) (quoting Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006)). "[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation." Id. The second, objective requirement looks to the seriousness of the deprivation or medical need. "A medical need is "serious" if it has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990) (citations omitted).

In this instance, however, the amended complaint does not contain any factual basis for the supposition that Cabral participated in Horan's medical treatment at all, let alone the actions or omissions that allegedly amounted to an Eighth Amendment violation. Rather, the claims appear

---

[3] Counts I and II combined assert this claim.

4

to be premised on her being a general supervisor of activity at the SCHOC in her capacity as Sheriff.

In the context of supervisory liability, it is well established that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676 (emphasis in original); see Leavitt, 645 F.3d at 502; Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). "[A] supervisor may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an 'affirmative link between the behavior of a subordinate and the action or inaction of the supervisor . . . such that the supervisor's conduct led inexorably to the constitutional violation.'" Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011) (omission in original) (quoting Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011)). Additionally, "isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).

Even assuming an underlying constitutional violation by medical personnel in the respect alleged, the complaint fails to support a plausible inference that Cabral had personally been involved with the subordinate personnel who provided the care such that she could be liable as a supervisor. Drawing a reasonable inference in the plaintiff's favor, that the January 22 letter from the plaintiff's counsel was received and read by Cabral, the letter neither establishes an "affirmative link" nor plausibly supports the inference that Cabral's conduct "led inexorably" to the purported constitutional violation. See Feliciano-Hernández, 663 F.2d at 533. Cabral's inaction after receiving a letter that notified her of a disagreement regarding the plaintiff's medical treatment plan is, without more, not enough to establish deliberate indifference on her part.

5

Additionally, an isolated incident of constitutionally deficient medical care does not plausibly allege a policy or practice of deliberate indifference to constitutional violations on the part of Cabral. See Maldonado-Denis, 23 F.3d at 582. Because the complaint does not state a plausible basis for relief, the § 1983 Eighth Amendment claim against defendant Cabral is dismissed.[4]

    B.    State Civil Rights Claim

The plaintiff alleges that the treatment he received at SCHOC also amounted to a violation of article XXVI of the Massachusetts Declaration of Rights and the Massachusetts Civil Rights Act ("MCRA"), Massachusetts General Laws Chapter 12, Section11I. Viable claims under the MCRA require the plaintiff to allege that his state or federal constitutional rights were interfered with by a person by means of threats, intimidation, or coercion. See Williams v. O'Brien, 936 N.E.2d 1, 4–5 (Mass. App. Ct. 2010) (citing Swanset Dev. Corp. v. Taunton, 668 N.E.2d 333, 337 (Mass. 1996)). "The Massachusetts legislature intended that even a direct deprivation of a plaintiff's rights 'would not be actionable under the act unless it were accomplished by means of one of these three constraining elements.'" Nolan v. CN8, 656 F.3d 71, 77 (1st Cir. 2011) (quoting Buster v. George W. Moore, Inc., 783 N.E.2d 399, 409 (Mass. 2003)); see also Hankey v. Town of Concord-Carlisle, 136 F. Supp. 3d 52, 76 (D. Mass. 2015). Additionally, the MCRA has traditionally precluded liability under theories of respondent superior in the public sphere. See Lyons v. Nat'l Car Rental Sys., Inc., 30 F.3d 240, 245 (1st Cir. 1994); Chaabouni v. City of Boston, 133 F. Supp. 2d 93, 101–03 (D. Mass. 2001); Sarvis v. Bos. Safe Deposit & Tr. Co., 711 N.E.2d 911, 921 (Mass. App. Ct. 1999).

---

[4] Although Cabral raised a qualified immunity defense in her motion to dismiss memorandum, (Mem. of Law in Supp. of Andrea Cabral's Mot. to Dismiss, 7 (dkt. no. 32)), a discussion of that defense is unnecessary given that the plaintiff has failed to allege a constitutional violation with respect to Cabral. See Feliciano-Hernández, 663 F.3d at 533 ("The first prong of the [qualified] immunity analysis requires that a plaintiff state a claim of violation of a constitutional right.").

Here, the amended complaint lacks factual allegations to support the contention that Cabral ever interacted with the plaintiff, let alone that she threatened, intimidated, or coerced him in any way. For that reason, the plaintiff's claim against her under the MCRA must be dismissed.

C.     State Common-Law Claims

The amended complaint alleges that the "defendants" are liable for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and assault and battery. (Am. Compl. ¶¶ 54–71.) Although the plaintiff does not advance any arguments against Cabral on these claims in his papers, they are addressed nonetheless.

The Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 285, § 2, protects public employees acting within the scope of their employment from liability caused by their negligence or wrongful acts. See Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003). The plaintiff has not alleged any facts suggesting that defendant Cabral was not acting within the scope of her employment. See id. As the remedies provided under the MTCA are the exclusive means to seek redress for negligence by public employees, the common-law negligence and negligent infliction of emotional distress claims that the defendant now asserts must be dismissed with respect to Cabral. Mass. Gen. Laws ch. 285, § 2; see id.; Canales v. Gatzunis, 979 F. Supp. 2d 164, 176 (D. Mass. 2013).

Finally, the plaintiff brings claims for intentional infliction of emotional distress and assault and battery. A claim for intentional infliction of emotion distress requires the plaintiff to show: (1) the defendant intended to inflict emotional distress, or should have known it was likely to result; (2) the defendant's conduct was extreme and outrageous; (3) the actions of the defendant caused the emotional distress; and (4) the emotional distress sustained by the plaintiff was severe. See Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir 1996) (citing Agis v. Howard Johnson

7

Co., 355 N.E.2d 315, 318–19 (Mass. 1976)). An assault and battery is the "intentional and unjustified force upon the person of another, however slight." Commonwealth v. Dorvil, 32 N.E.3d 861, 866 (Mass. 2015) (quoting Commonwealth v. McCan, 178 N.E. 633, 634 (Mass. 1931)).

With respect to the emotional distress claim, the amended complaint does not include any facts pertaining to Cabral's intent, or what actions she took that could be considered extreme and outrageous. Similarly, the complaint does not contain sufficient facts to support a claim against defendant Cabral for assault and battery—that she used force upon the plaintiff intentionally and without justification. To the extent that these claims were intended to be brought against defendant Cabral, they are dismissed for lack of factual support beyond conclusory recitations of the elements.

## III. Conclusion

For the reasons stated herein, Andrea Cabral's Motion to Dismiss (dkt. no. 31) is GRANTED, and all claims against her are DISMISSED. Because the complaint has already been amended once, the plaintiff's request to be allowed to replead is denied.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge